# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

|                      |   |                              |
|----------------------|---|------------------------------|
| LUCAS CAMPBELL,      | ) |                              |
| Petitioner,          | ) |                              |
| vs.                  | ) | Case No. 11-3209-CV-S-RED-P |
| MICHAEL BOWERSOX,    | ) |                              |
| Respondent.          | ) |                              |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Lucas Campbell, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 10, 2011, seeking to challenge his 2006 conviction and sentence for murder in the first degree, which was entered in the Circuit Court of Greene County, Missouri.

Petitioner raises eight grounds for relief: (1) that the trial court erred in admitting a videotaped statement of a witness from a pre-trial interview because such evidence bolstered the witness's testimony; (2) that the trial court erred in admitting six exhibits that were irrelevant and prejudicial; (3) that trial counsel was ineffective; (4) that the prosecutor's actions constituted misconduct; (5) that the trial court lacked jurisdiction; (6) that the trial court erred when it refused to allow the jury to consider a lesser offense; (7) that the trial court erred in granting the state's motion in limine which hindered the defense from presenting evidence that might suggest the crime was committed by another party; and (8) that the trial court erred in allowing the state to present evidence that petitioner was known for selling drugs. Respondent contends that grounds 1, 2, and part of 3 are without merit, and grounds 4, 5, 6, 7, 8, and remaining parts of ground 3 are procedurally defaulted.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> [Petitioner], Nick Gamblin, and their girlfriends lived together. Gamblin, who was on probation, was selling drugs as a middleman for [petitioner]. People regularly came to their house to use drugs, usually marijuana. Bobby Wilson ("Victim") came one day with a lot of marijuana. After smoking awhile, Gamblin, [petitioner] and his girlfriend, and Victim borrowed a car to drive around and smoke some more.
>
> Victim wanted to sell some of his marijuana. [Petitioner] directed Gamblin, who was driving, to Sarena Hart's rural home. [Petitioner] took Victim's marijuana, and along with Gamblin, went inside. Victim and [petitioner's] girlfriend stayed in the car.
>
> Instead of mentioning the marijuana to Hart, his former girlfriend, [petitioner] asked if she would stay his friend if he had done something really bad. Hart jokingly asked [petitioner] who he had killed. [Petitioner] replied no one "yet." [Petitioner] asked Hart to leave for a little while. When she refused, he asked if he could hide a body on her property. He told Hart not to go outside when they left. She did so anyway, waved at the other two in the car, and Victim smiled and waved back.
>
> The group left, drove around, and smoked more. Gamblin was driving down a farm road when [petitioner] said to pull over so he could urinate. All three men got out. Gamblin finished first and returned to the driver's seat. He heard a gunshot and saw Victim lying near the ditch. [Petitioner] returned to the car, holding a .40 caliber gun Gamblin had seen him carry before. [Petitioner] said he was sorry to do that in front of them, but he thought Victim was a "snitch." [Petitioner] took over the driver's seat, warning Gamblin to keep his mouth shut or he would be killed. [Petitioner] drove to an acquaintance's trailer, left the gun there, and drove home after stopping for something to eat.
>
> Gamblin was scared and shaking when they returned. He called Richard Stacey, a friend who sold drugs and had known [petitioner] for years. Without going into details, Gamblin told Stacey that [petitioner] had done something bad and Stacey needed to talk to him. Stacey found [petitioner], who (in two conversations with

-2-

> Stacey) said he "popped" Victim in the back of the head, "blew half his face off[,]" and dropped the gun off afterwards because he thought Victim was a police informant.
>
> Ironically, Stacey was a police informant. He relayed [petitioner's] statements to law enforcement, which linked that information to Victim's death at the crime scene. Police eventually found the car, which Gamblin had hidden, and arrested Gamblin on a probation violation warrant. They recovered [petitioner's] gun, still holding eight live .40 caliber hollow-point rounds. n.1
>
> > n.1 The gun had a ten-round capacity.
>
> They forensically established that the same gun fired a spent casing found at the crime scene. Police searched [petitioner's] bedroom after his arrest and found a holster fitting a .40 caliber handgun, and a cash box holding ammunition, including one .40 caliber cartridge matching the live rounds still in the murder weapon. There was trial testimony that [petitioner] always carried a .38 or .40 caliber handgun. The autopsy showed Victim was shot in the back of the head with a bullet of similar caliber that cut his brain stem in half.
>
> [Petitioner] did not testify at trial. The jury found him guilty of first-degree murder, and he was sentenced to life without parole.

(Respondent's Exhibit E, pp. 2-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court's findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUNDS 1 & 2**

In ground 1, petitioner contends that when the trial court allowed the state to show Gamblin's video recorded testimony, the effect was improper bolstering, and therefore was an abuse of discretion. In ground 2, petitioner contends that the trial court abused its discretion in admitting six pieces of evidence—a cash box, ammunition, a holster, and photographs thereof.

On direct appeal, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> Gamblin was a key prosecution witness. The defense focused on his plea bargain to discredit his testimony. In opening statement, for example, defense counsel told the jurors that Gamblin made a deal to protect himself from prosecution; Gamblin would accrue benefits from testifying; and that:
>
>> You will hear how Nick Gamblin is going to walk out of this courtroom a free man because of a plea agreement he had made with the State. Even from his own testimony that you will hear, he is in the car, sees a murder, hides essential evidence, does not notify law enforcement before they find him, and faces only one Class D felony of tampering with evidence. That's it. And as long as his testimony satisfies the State, he walks out of here a free man. Not even on probation. He will be done with the judicial system with no one watching. Nick Gamblin from his own admissions, you will hear, is involved up to his eyeballs in this crime but, from his testimony, will be free.
>
> Defense counsel also insinuated that Gamblin was framing [petitioner], and that his testimony was influenced by his plea deal.
>
> To rebut these "fabrication" claims, and over [petitioner's] objection, the state was allowed to play Gamblin's videotaped statement to police on the day of his arrest. [Petitioner] claims this was improper bolstering since the video largely duplicated and corroborated

Gamblin's in-court testimony.

Prior consistent statements are admissible to rehabilitate a witness whose credibility has been attacked by an express or implied claim of fabricated trial testimony. ***State v. Ramsey***, 864 S.W.2d 320, 329 (Mo. banc. 1993). "Statements consistent with trial testimony given before the corrupting influence to falsify occurred are relevant to rebut a claim of contrivance." ***Id.***, *citing* McCormick on Evidence, § 251, at 119 (4th ed. 1992); ***State v. Garris***, 75 S.W.3d 367, 369 (Mo. App. 2002); ***State v. Norville***, 23 S.W.3d 673, 678 (Mo. App. 2000).

In contrast, improper bolstering occurs when an out-of-court statement is offered *solely* to duplicate or corroborate trial testimony. If the statement is offered for a relevant purpose such as rehabilitation, it is not improper bolstering. ***State v. Christeson***, 50 S.W.3d 251, 267 (Mo. banc 2001); ***State v. Wolfe***, 13 S.W.3d 248, 257 (Mo. banc 2000), ***Ramsey***, 864 S.W.2d at 329. The suggestion that a witness's testimony is recently fabricated opens the door to introduction of the witness's consistent statement made prior to the suggested fabrication. ***Norville***, 23 S.W.3d at 678; ***State v. Ray***, 852 S.W.2d 165, 168 (Mo. App. 1993).

Gamblin's video statement predated his plea bargain, and presumably any plea bargain discussions as well. However, [petitioner] claims Gamblin's motive to lie predated his arrest, and thus argues that the video was made *after* the "corrupting influence." This is not the first case where parties have disputed the relevant date for these purposes. *See* ***Garris***, 75 S.W.3d at 369. *See also* ***Norville***, 23 S.W.3d at 678-79. We initially note, as we did in ***Norville***, 23 S.W.3d at 678, the trial court's broad discretion in determining whether to admit or exclude trial evidence; that we review for prejudice, not mere error; and that we will reverse only for error so prejudicial that it deprived [petitioner] of a fair trial.

Since the defense repeatedly cited Gamblin's plea bargain to discredit his testimony, the trial court did not abuse its discretion in permitting the state to show that Gamblin told the same story before his plea deal or any such negotiations. Nothing precluded [petitioner] from a jury argument that Gamblin was motivated to lie before he was arrested, and to discount his statement accordingly. Considering defense counsel's focus on the plea deal, however, such an argument more properly goes to the statement's weight, not its admissibility.

-5-

> . . .
>
> > [Petitioner] also challenges the admission of the cash box, ammunition, and holster found in [petitioner's] bedroom. n.2
> >
> > > n.2 Photographs of each item were admitted along with the items themselves. Point II, like [petitioner's] trial objections, covers both the items and the photos and makes the same arguments to each. For simplicity, therefore, we will refer only to the items.
> >
> > There was uncontroverted testimony that the holster was a good fit for the killing weapon, and thus no abuse of discretion in admitting it. [sic]
> >
> > [Petitioner] has not contested the relevance of the cash box and .40 caliber shell therein. He argues the prejudice of the other ammunition—which he admits is not illegal to possess—so outweighs these exhibits' relevance that it was error to admit them. Rather than denying the point for failure to file the relevant exhibits for our review, we carefully combed the transcript again and are satisfied that admitting this evidence was no abuse of discretion. Nor has [petitioner] shown any prejudice—*i.e.*, that "when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion...." ***State v. Manley***, 223 S.W.3d 887, 892 (Mo. App. 2007), *quoting* ***State v. Roberts***, 948 S.W.2d 577, 592 (Mo. banc 1997). We find nothing in the record that diverted the jury's attention from the issues to be resolved. ***State v. Mills***, 809 S.W.2d 1, 5 (Mo. App. 1990).

(Respondent's Exhibit E, pp. 4-7) (emphasis supplied).

The resolution of grounds 1 and 2 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence resented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

Grounds 1 and 2 are denied.

-6-

Case 6:11-cv-03209-RED   Document 14   Filed 02/28/12   Page 6 of 13

## GROUND 3, PART 1

In ground 3, petitioner presents eleven ways that trial counsel was allegedly ineffective. As the first part of this ground, petitioner claims that trial counsel with ineffective for failing to investigate potential alibi witnesses or call them to testify.

On appeal from the denial of petitioner's Rule 29.15 motion for post-conviction relief, the Missouri Court of Appeals disposed of this part of petitioner's claim as follows:

> Where a movant claims that counsel rendered ineffective assistance in that he failed to call certain witnesses, the movant must plead and prove the following: (1) that trial counsel knew or should have known of the existence of the witness; (2) that the witness could have been located through reasonable investigation; (3) that the witness would have testified if called; and (4) that the witness's testimony would have provided the movant with a viable defense. ***Worthington v. State***, 166 S.W.3d 566, 577 (Mo. banc 2005). Under consideration here is whether the witness named by [petitioner] would have provided him with a viable defense.
>
> At the evidentiary hearing on his motion, [petitioner] testified that he told trial counsel that at the time of the murder he "was at Dustin Crews' house or apartment messing with a motorcycle[.]" [Petitioner] further stated that he provided trial counsel with "information about contacting Dustin Crews[,]" and that he and perhaps his mother gave trial counsel several names, including that of William James. This was the extent of [petitioner's] testimony in regard to the identification of potential alibi witnesses and possible alibi.
>
> William James first testified at the evidentiary hearing that [petitioner] came to his house "fairly really early in the morning or really late at night, somewhere in the wee hours of the morning...of the night that [Wilson] was allegedly shot." James also testified that he saw [petitioner] in the "early morning hours of the 21st." On cross-examination, James testified as follows:
>
> > Q     Mr. James, so just to be clear, the only time you personally saw the defendant was late the evening of the 21st?

-7-

A      Yeah. It was early morning.

Q      Early morning. So early morning, the early morning hours like three or four, so really that would be on the 22nd.

A      No. It would have been early morning hours of the 21st.

Q      Of the 21st. So you have no knowledge, personal knowledge as to where Mr. Campbell had been in the afternoon or the evening of the 21st?

A      Direct knowledge, I don't think so.

Q      You never personally saw him at that time?

A      Getting a little bit – I know that basically the date that he was allegedly shot, I had seen him after that time frame.

Q      So you had seen him after the alleged—

A      So whether it was the 21st or 22nd, I couldn't tell you.

Q      Okay that's fine. So you had seen him after, but you don't know what he was doing during the time of the alleged incident?

A      No, I don't.

On re-cross examination, James further testified:

Q      I'm like you, I am a little confused about the dates so I just want to make sure I am clear, okay. So the alleged murder occurred. Then that's when – that evening, early morning hours after that, that's when you saw the defendant. He came to your door, knocked on the door, is that correct?

-8-

Case 6:11-cv-03209-RED   Document 14   Filed 02/28/12   Page 8 of 13

A       I do believe so, yes.

Dustin Crews testified at [petitioner's] evidentiary hearing that he remembered seeing [petitioner] before he heard about the murder, but he did not know the date. Crews stated that he first saw [petitioner] in Crews's apartment complex early in the afternoon and they talked for a little while. Crews had assumed that [petitioner] was returning from visiting William James, who lived in the same complex as Crews. Crews also said that he saw [petitioner] later that day on a green motorcycle. Crews could not remember the exact time; at one point he stated he saw [petitioner] "probably after 10:00" and later stated that "[i]t was dark[,]" and had been dark "[a] couple of hours." On that occasion, Crews said he was outside his apartment when [petitioner] arrived on a motorcycle, and he and [petitioner] worked on the motorcycle for "30, 45 minutes" and then went inside Crews's home for "[p]robably an hour and a half, two hours." However, Crews was not able to pinpoint on what day these events occurred. He testified that he remembered "it was two to three days...prior to [petitioner] being arrested[,]" however on re-cross examination, when asked if the day could have been Saturday or Sunday, Crews stated, "Yeah, it could have been."

On the issue of whether either witness could provide [petitioner] a viable defense, the motion court found:

> neither [Dustin Crews nor William James] can provide [petitioner] with a viable alibi defense. Both testified that they only saw [petitioner] briefly on the day of the murder. In fact, Mr. Crews could not even verify that he had seen [petitioner] on the day of the murder when he came by to fix his motorcycle. It is quite clear that even if Mr. Crews or Mr. James had testified, they could not provide a viable defense as neither could account for [petitioner's] whereabouts at the time of the murder.

The motion court further found that "[petitioner's] claim is without merit and is denied."

. . .

Here, [petitioner] failed to prove that testimony from either Dustin Crews or Williams [sic] James would have provided a viable defense

-9-

> in his case: an alibi for the time during which Wilson was murdered. While testimony from the medical examiner could not provide an approximate time of Wilson's death, testimony from other witnesses established an approximate timeframe. According to Nick Gamblin, the road trip by car that culminated in Wilson being shot by [petitioner] near the bridge on Highway 115 began between 3:30 and 4:30 p.m. on August 21, 2004. Sherry Hahn testified that she and her roommate, Jackie Willdock, discovered a boy's body at approximately 7:20 p.m. on August 21, 2004, when they drove across a bridge on Highway 115 on their way to go fishing and spotted the body lying face-up in a ditch on the south side of the bridge. Hahn, a registered nurse, testified that before performing CPR, she detected no pulse, but when she felt the body he was still warm and "was still kind of pink." At 7:22 p.m. on that date, the Polk County 911 communications center received a call reporting a body discovered on Farm Road 115 near the Farm Road 2 intersection. Additional testimony, if believed by the jury, would serve to establish that Wilson was murdered in the late afternoon or early evening of August 21, 2004, before 7:20 p.m.
>
> There was no testimony from either Crews or James that placed [petitioner] at Crews's apartment in the late afternoon or early evening of August 21, 2004. James admitted he did not know [petitioner's] whereabouts at the time of the murder and could not be sure of which day he saw [petitioner], and, as the motion court noted, Crews was not sure which day [petitioner] and he were at his apartment working on a motorcycle. As such, neither witness could have provided [petitioner] with a viable defense or unqualifiedly supported an alibi. Thus, [petitioner] failed to demonstrate that there was a reasonable probability that either witness's testimony would have persuaded a jury to acquit him, and [petitioner] cannot support his claim that trial counsel rendered ineffective assistance. The motion court did not clearly err in denying [petitioner's] motion on this ground.

(Respondent's Exhibit J, pp 4-8).

The resolution of this portion of ground 3 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence resented in the State court

proceeding." 28 U.S.C. § 2254(d)(1) and (2).

Part 1 of ground 3 is denied.

## GROUNDS 4, 5, 6, 7, 8, & REMAINING PARTS OF GROUND 3

Petitioner attempts to present several grounds for relief that were not raised on appeal from the denial of his Rule 29.15 post-conviction relief motion. In ground 3, petitioner alleges ten other reasons in support of his contention that his trial counsel was ineffective. In ground 4, petitioner asserts that the prosecutor at trial acted in ways that constitute misconduct. In ground 5, petitioner claims that the trial court lacked jurisdiction. In ground 6, petitioner argues that the trial court should have allowed the jury to consider a lesser offense via an instruction. In ground 7, petitioner alleges that the trial court's granting of the state's motion in limine was an abuse of discretion. In ground 8, petitioner contends that the trial court should not have allowed evidence of his involvement in selling drugs. Respondent counters that all of these grounds are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner defaulted the claims set forth in parts of ground

-11-

3 and grounds 4,5,6,7, and 8 by not raising them on appeal from the denial of his Rule 29.15 motion.[2] Consequently, these grounds for relief may not be reviewed by the Court unless petitioner can demonstrate cause and actual prejudice or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that petitioner has demonstrated "cause" for his procedural default.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claim if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence... that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted [him] in light of the new evidence." Id. (citing Schlup v. Delo, 513 U.S. 298 (1995)). A review of the record reveals that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from the default of parts of ground 3 and grounds 4, 5, 6, 7, and 8. He has also failed to meet the Schlup standard for actual innocence. Id. Therefore, a federal review of these grounds is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

---

[2] In his complaint, petitioner references his having raised certain grounds in his Rule 29.15 motion for post-conviction relief. However, to avoid procedural default, he must also raise these grounds on appeal from the denial of his motion. To the extent that petitioner claims his post-conviction counsel was ineffective for failing to raise these grounds on appeal, he should be aware that there is no constitutional right to effective post-conviction counsel, and, therefore, that claim would be without merit.

-12-

Case 6:11-cv-03209-RED   Document 14   Filed 02/28/12   Page 12 of 13

The remainder of ground 3 and grounds 4,5,6,7, and 8 are denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

    (1) the above-captioned petition for a writ of habeas corpus is denied;

    (2) this case is dismissed with prejudice; and

    (3) the issuance of a certificate of appealability is denied.

                                   */s/ Richard E. Dorr*
                                   RICHARD E. DORR
                                   UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated: February 28, 2012.